IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| CARL BOECHERER, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 08 cv 1332 |
| v. | ) ) ) | Judge Blanche Manning<br>Magistrate Judge Schenkier |
| BURLING BANK, | ) ) | |
| Defendant. | ) ) | |

## DEFENDANT BURLING BANK'S
## MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

NOW COMES Burling Bank, by its attorneys, John K. Kneafsey, Donald C. Shine and Thomas M. Lombardo of Nisen & Elliott, LLC, and for its Memorandum of Law in Support of its Motion to Dismiss, pursuant to Rule 12(b)(6) and (d) of the Federal Rules of Civil Procedure, states as follows:

### I.    Introduction

The Plaintiff, Carl Boecherer, seeks actual and statutory damages because he was charged an Automatic Teller Machine ("ATM") fee of $1.75 by Burling Bank. The Plaintiff argues that he is entitled to damages because, when he utilized the services provided by Burling Bank and its ATM, there purportedly was no sign on the ATM regarding the fee.[1] However, Burling Bank's ATM screens expressly notify consumers of the $1.75 fee, and to complete the transaction, a consumer must expressly consent to the $1.75 fee by pressing a button on the ATM. The class of individuals

---

[1] Banks typically do not charge their own customers for using the bank's own ATMs. However, banks usually charge customers of other banks (hereinafter "consumers") a fee for the convenience and service of using their ATMs. The Plaintiff is not a Burling Bank customer, and therefore he may have been charged a nominal $1.75 fee to take advantage of Burling Bank's ATM services.

on whose behalf the Plaintiff purportedly brings this suit would have pressed that same button and, like the Plaintiff, they would have consented to the $1.75 fee.

Under federal law, Burling Bank is entitled to dismissal of this case in its entirety, because an ATM operator that posts a transaction fee notice on or near its ATM cannot be held liable for actual or statutory damages under the Electronic Fund Transfers Act ("EFTA") if that notice is subsequently removed, damaged or altered by someone who is not a bank employee. Burling Bank installed appropriate signs near its ATMs, and nobody from Burling Bank took the signs down. As a matter of law, Burling Bank cannot be held liable to the Plaintiff for actual or statutory damages under these facts. Therefore, the Plaintiff's entire case should be dismissed. [2]

Concomitantly, a Plaintiff is not entitled to actual damages under the EFTA due to the voluntary or self-inflicted nature of his "injury." The EFTA contains a causation requirement linking the wrongdoing of an ATM operator to the consumer's injury- a link the Plaintiff cannot make because his express consent to the fee destroys his claim that he was harmed by a missing sign on the machine. Because the Plaintiff consented to the ATM fee by pressing the "click-through" button, he can have no actual damages pursuant to the EFTA. Additionally, the maxim *volenti non fit injuria* disallows a plaintiff from recovering damages that are self-inflicted. For these additional reasons, the Plaintiff's claim for actual damages should be dismissed.

---

[2] The Plaintiff's counsel, Lance Raphael and his "Consumer Advocacy Center," who have filed a large number of nearly identical lawsuits in this district and throughout the country, apparently hope to secure an exorbitant attorney's fee award because of this so-called $1.75 "injury" that the Plaintiff agreed to pay in return for using Burling Bank's ATM services, or to coerce a settlement by threatening lengthy and costly class action litigation. This Court should grant Burling Bank's

## II.     Applicable Standard for Dismissal

Rule 12(b)(6) permits dismissal where the plaintiff has failed to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). A party may raise matters outside of the pleadings on a Rule 12(b)(6) motion, but the court must treat the motion as one for summary judgment under Rule 56. Edward Gray Corp. v. Nat'l Union Fire Ins. Co., 94 F.3d 363, 366 (7th Cir. 1996), Fleischfresser v. Directors of School Dist. 200, 15 F.3d 680, 684 (7th Cir. 1994). Burling Bank's Motion to Dismiss is supported by affidavit. Consequently, the Motion to Dismiss should be treated as one for summary judgment. Fleischfresser, 15 F.3d at 684.

Summary judgment should be granted if the pleadings and supporting documents show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Id. at 685, *see also* Fed. R. Civ. P. 56(c). Furthermore, if the party opposing a motion for summary judgment bears the burden of proof on an issue, he must go beyond the pleadings and affirmatively demonstrate a genuine issue of material fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). As set forth below, there is no genuine issue of fact and thus Burling Bank is entitled to summary judgment at this time.

## III.     Statement of Facts

1.     Burling Bank operates two ATMs in the lobby of 141 West Jackson Boulevard in Chicago, Illinois. [Affidavit of Dora Asmussen, Burling Bank's Vice President and Cashier, attached hereto as "Exhibit A."]

---

Motion to Dismiss before the Plaintiff's self-inflicted injury forces Burling Bank to devote any more money or resources in responding to these self-inflicted and baseless claims.

2.     Burling Bank has never operated ATMs at 144 West Jackson Boulevard in Chicago, Illinois. ["Exhibit A."]

3.     The ATMs at 141 West Jackson are side-by-side one another, and were installed in February of 2006. ["Exhibit A."]

4.     Burling Bank caused a transaction fee notice to be posted on each of the two ATMs, upon completion of the installation in February of 2006. The notices were affixed to the machines with adhesive and provided:

> FEE NOTICE
>
> A fee may be imposed for a cash withdrawal. This fee is added to the amount of your transaction and is in addition to any fees that may be charged by your financial institution.

["Exhibit A."]

5.     At no time since the ATM transaction fee notices were installed did Burling Bank cause the notices to be removed, damaged or altered. ["Exhibit A."]

6.     At no time prior to August of 2007 was Burling Bank placed on notice that the ATM fee notices were removed, damaged or altered. ["Exhibit A."]

7.     Before any Burling Bank ATM consumer was charged with an ATM transaction fee in August of 2007, the ATM screen notified the consumer:

> Burling Bank will charge U.S. cardholders a $1.75 fee for this transaction. This fee is in addition to any fees which may be charged by your financial institution.
>
> Do you wish to continue?
>
> Yes (Fee will be assessed)  ------------ >
>
> No (Cancel, Fee will not be assessed) - >

4

["Exhibit A."]

      8.     A consumer who uses a Burling Bank ATM must press a "click-through" button and consent to the ATM transaction fee before the fee is charged to the consumer. ["Exhibit A."]

## IV.    Plaintiff's Entire Case Fails Under Federal Law

The Plaintiff's entire case should be dismissed because the EFTA provides ATM operators with an absolute defense where the operator installed a fee notice that was subsequently removed, damaged or altered by someone other than a bank employee. Burling Bank put up such a sign, and therefore the Plaintiff cannot recover any actual or statutory damages whatsoever under the provisions of the EFTA.

### A.    The Electronic Fund Transfer Act and Regulation E

Under section 1693b of the EFTA, an ATM operator must (1) provide notice to the consumer that a fee is being imposed by the operator, and (2) disclose the amount of the fee. 15 U.S.C. § 1693b (d)(3)(A) (2007). Specified notices must appear on the ATM screen and "…in a prominent and conspicuous location on or at the automated teller machine at which the electronic fund transfer is initiated by the consumer." 15 U.S.C. § 1693b(d)(3)(B) (2007).

Regulation E was issued by the Board of Governors of the Federal Reserve System to implement the EFTA. 12 C.F.R. § 205.1 (2007). Section 205.16 of Regulation E governs disclosures at ATMs, and provides, in pertinent part:

> (c) Notice requirement. To meet the requirements of paragraph (b) of this section, an automated teller machine operator must comply with the following:
>
> (1) On the machine. Post in a prominent and conspicuous location on or at the automated teller machine a notice that:

5

(i) A fee will be imposed for providing electronic fund transfer services or for a balance inquiry; or

(ii) A fee may be imposed for providing electronic fund transfer services or for a balance inquiry, but the notice in this paragraph (c)(1)(ii) may be substituted for the notice in paragraph (c)(1)(i) only if there are circumstances under which a fee will not be imposed for such services; and

....

12 C.F.R. § 205.16 (2007). In summary, both EFTA section 1693b and Regulation E require an ATM operator to post a fee notice on or near its ATMs.

Violations of the EFTA may result in civil liability against ATM operators. Civil liability for EFTA violations is governed by section 1693m, which provides in pertinent part:

(a) Individual or class action for damages; amount of award

Except as otherwise provided by this section and section 1693h of this title, any person who fails to comply with any provision of this subchapter with respect to any consumer, except for an error resolved in accordance with section 1693f of this title, is liable to such consumer in an amount equal to the sum of- -

....

15 U.S.C. § 1693m (2007) (emphasis added).

According to section 1693m, the safe harbor provision contained in section 1693h shields an ATM operator from liability under section 1693m in certain situations. Specifically, under section 1693h, where an ATM operator posts an ATM transaction fee notice that is subsequently removed, damaged or altered, by anyone other than the ATM operator, there is no liability for failing to provide that fee notice. Section 1693h provides in pertinent part:

(d) Exception for damaged notices

If the notice required to be posted pursuant to section 1693b(d)(3)(B)(i) of this title by an automated teller machine operator has been posted by such operator in compliance with such section and

6

> the notice is subsequently removed, damaged, or altered by any
> person other than the operator of the automated teller machine, the
> operator <u>shall have no liability</u> under this section for failure to comply
> with section 1693b(d)(3)(B)(i) of this title.

15 U.S.C. § 1693h(d) (2007) (emphasis added).

    B.    <u>Burling Bank Cannot be Held Liable Under the EFTA</u>

In his Class Action Complaint, the Plaintiff alleges that Burling Bank operates two ATMs located at 141 West Jackson Boulevard in Chicago, Illinois. [Class Action Complaint, "Exhibit B," ¶25.][3] The Plaintiff claims that he used one of Burling Bank's ATMs on August 23, 2007 and was charged a $1.75 fee to withdraw money from that ATM. ["Exhibit B," ¶¶11-12.] The Plaintiff also claims that there were no transaction fee notices posted on or near Burling Bank's ATMs when he made his withdrawal. ["Exhibit B," ¶10.] The Plaintiff thus argues that Burling Bank violated section 1693b of the EFTA and section 205.16 of Regulation E by charging him this ATM fee without complying with the applicable physical fee notice requirements. ["Exhibit B," ¶¶26-27.]

This case should be dismissed, in accordance with federal statute, even if there was no notice posted on or near Burling Bank's ATMs when Plaintiff made his withdrawal. Burling Bank posted ATM transaction fee notices on its ATM machines before Plaintiff made his withdrawal. [Facts, ¶4.] Burling Bank's notices complied with the requirements of section 1693b(d)(3)(A) and section 205.16 of Regulation E. [Facts, ¶4.] Likewise, Burling Bank never caused the ATM transaction fee notice to be removed, damaged or altered. [Facts, ¶5.] Therefore, in accordance with section 1693h(d), Burling Bank <u>shall have no liability</u> under the notice requirements of the EFTA.

---

[3] Notably, the plaintiff alleges that Burling Bank operates two ATMs at 144 West Jackson, and that there was no sign on or near the machines at that address. ["Exhibit B," ¶¶ 9-10.] However, the Plaintiff also alleges that the ATM he withdrew money from was located at 141 West Jackson, but he is silent on the existence of signage at the second, and correct address of Burling Bank's ATMs. Therefore, the Complaint also should be dismissed for failing to state a claim.

Accordingly, Burling Bank is entitled to judgment as a matter of law under the applicable Rule 56 standard. Fed. R. Civ. P. 56(c).

## V. The Self-Inflicted Nature of Plaintiff's "Injury" Precludes Recovery of Actual Damages

The preceding section of this Memorandum establishes that this case should be dismissed, in its entirety, because the EFTA precludes recovery against ATM operators that post the requisite signage. Assuming, *arguendo*, that the Court does not agree, the claim for actual damages should be dismissed for the following reasons.

A person that knowingly and willingly agrees to pay an ATM fee, by pressing a click-through button accepting that fee, is not allowed to recover "actual damages." First, the EFTA requires that the ATM operator cause the plaintiff's loss or that the plaintiff detrimentally rely upon the ATM operator's violation of the Act, before the plaintiff can recover actual damages. Therefore, where a plaintiff is not harmed directly as a result of the ATM operator's statutory violation, there are no actual damages. Second, the maxim *volenti non fit injuria* similarly prohibits a Plaintiff from recovering actual damages under the EFTA if the alleged injury was consented to in advance. For these additional reasons, the Plaintiff is not entitled to actual damages against Burling Bank, and the portion of the Complaint which seeks actual damages should be dismissed.

### A. There was no Detrimental Reliance or Causation

Section 1693m(a)(1) of the EFTA provides,

> Except as otherwise provided by this section and section 1693h of this title, any person who fails to comply with any provision of this subchapter with respect to any consumer, except for an error resolved in accordance with section 1693f of this title, is liable to such consumer in an amount equal to the sum of- - (1) any <u>actual damage sustained</u> by such consumer <u>as a result of such failure</u>.

15 U.S.C. § 1693m (2007) (emphasis added). This provision plainly requires a causal link between the actual damages alleged and the ATM operator's wrongdoing. Such causation does not exist in this case because the Plaintiff consented to the ATM fee. [Facts, ¶¶ 7-8.]

In a similar EFTA case, Brown v. Bank of America, the court explained,

> Here, Bank of America's ATMs all require that a customer consent to the assessment of a fee before the Bank will levy a charge. Each ATM is equipped with a "click-through" screen that notifies the user that he or she will be charged a fee and requires that the user consent before the transaction will proceed…Thus, even if Plaintiffs can establish that the on-machine notice is defective under state law, they cannot establish loss causation because the click-through screen breaks the causal connection between the defective notice and the payment of the fee. In other words, the second notice obviates any harm. Bank of America is entitled to summary judgment….

457 F. Supp. 2d 82, 89 (D. Mass. 2006).

The Brown court then concluded, "Given the electronic consent, Plaintiffs cannot establish the causal link between an ill-placed decal and monetary loss necessary to recover actual damages under the EFTA." Id. at 90. See also Martz v. PNC Bank, 2006 WL 3840354 at *5-6 (W.D. Pa. 2006) [Acknowledging Brown's holding that recovery of actual damages under the EFTA requires a causal link which is destroyed by clicking a consent button, but denying dismissal at the initial stages of the case only because the defendant's ATMs did not all operate the same way.]

Here, as in Brown, the Plaintiff cannot recover actual damages because the ATM screen informed the Plaintiff of a transaction fee, and the Plaintiff affirmatively pressed the click-through button and accepted the ATM fee. [Facts, ¶¶ 7-8.] The Plaintiff's express consent to the fee thus breaks the causal link between the allegedly missing signage and Burling Bank charging a fee. For these reasons, the Plaintiff's claim for actual damages should be dismissed.

B.    "To a Willing Person, No Injury is Done"

The maxim *volenti non fit injuria*, which has a long history in the common law, also serves to deny the Plaintiff actual damages. Literally translated, this Latin phrase means, "to a willing person, no injury is done." The court in Gover v. Central Vermont Ry. Co. summarized the doctrine, stating,

> If one, knowing and comprehending the danger, voluntarily exposes himself to it, though not negligent in so doing, he is deemed to have assumed the risk and is precluded from a recovery for an injury resulting therefrom. The maxim is predicated upon the theory of knowledge and appreciation of the danger and voluntary assent thereto.

118 A. 874, 877 (Vt. 1922). The Gover court went on to explain that the maxim applied in cases where the plaintiff was able to make an "intelligent decision," and where he nevertheless acted of his own free will in the face of harm. Id.

The maxim *volenti non fit injuria* has been recognized by the Supreme Court since the 19th Century. *See e.g.*, Fitzpatrick v. Flannagan, 106 U.S. 648, 659 (1882), and Marshall v. City of Vicksburg, 82 U.S. 146, 150 (1872) [$5.00 wharfage charge not recoverable where claimant was member of city council who encouraged the new wharfage charge and ordinance passed out of his pushing the council for it.] The Seventh Circuit has also recognized the maxim for well over one hundred years. *See e.g.*, Kingman & Co. v. Stoddard, 85 F. 740 (7th Cir. 1898) ["...and no one acting with full knowledge can justly say that he has been deceived by false representations. *Volenti non fit injuria.*"]

In a similar EFTA case filed by this Plaintiff's counsel, Judge Milton Shadur recently ruled that *volenti non fit injuria* prohibited the plaintiff from recovering actual damages under the EFTA because the plaintiff actually pressed the click-through button and voluntarily accepted the ATM fee.

Mowry v. J.P. Morgan Chase Bank, N.A., No. 06-C-4312. [September 27, 2006 Transcript of Proceedings, "Exhibit C."] Judge Shadur even issued a Memorandum in that case, *sua sponte*, on August 11, 2006, questioning how the plaintiff could proceed with his actual damages claim where he consented to the ATM fee, in light of the maxim *volenti non fit injuria*. [Memorandum of August 11, 2006, "Exhibit D."]

On September 27, 2006, Judge Shadur ruled that the plaintiff in Mowry could not recover actual damages under the EFTA because he accepted the ATM fee by pressing the button, and dismissed that portion of the plaintiff's claim. ["Exhibit C."] Judge Shadur explained, "And I recognize the [EFTA] provision says you can't make a charge. But the point is that when you talk about the damage that results from that, the damage as I have said is directly the product of the plaintiffs' own action." ["Exhibit C," p. 5.]

Here, like in the Mowry case, "[The Plaintiff seeks] to catch the brass ring (or rather the gold ring) of major damages and corresponding attorneys' fees…" ["Exhibit D."] But it is also clear, as in Mowry, that the Plaintiff had the opportunity to decline the ATM transaction fee before pressing the button and accepting the fee. [Facts, ¶¶ 7-8.] Under *volenti non fit injuria*, this Court should not permit the plaintiff to knowingly and willingly cause himself an alleged "injury," and then sue Burling Bank for exorbitant "actual damages" and attorney's fees. The Plaintiff and his attorneys should not be awarded the "gold ring" for a lawsuit the Plaintiff could easily have engineered, and instead, the claim for actual damages should be dismissed.[4]

---

[4] Burling Bank's investigation has uncovered that the Plaintiff's counsel and his associates have filed approximately fourteen class action cases under the EFTA, and possibly many more in other jurisdictions, prompting the question whether these cases are a result of champerty, barratry or lawyer-driven litigation, in light of the need for a "plaintiff" to voluntarily incur "damages" to create a cause of action.

## VI.  **Conclusion**

The Plaintiff's Complaint should be dismissed in its entirety because Burling Bank cannot be held liable to the Plaintiff under the EFTA for actual or statutory damages. Burling Bank posted the requisite notices on its ATMs prior to the Plaintiff's transaction, and at no time did Burling Bank cause the notices to be removed, altered or damaged. The EFTA provides an absolute shield to liability under these facts, and consequently the Plaintiff's entire suit, for both actual and statutory damages, should be dismissed.

Dismissal should additionally be entered with respect to the Plaintiff's claim for actual damages, because the Plaintiff is not entitled to recover for "damages" he voluntarily incurred. The EFTA requires a causal link between Burling Bank's "violation" of the Act and the Plaintiff's damages. Since the Plaintiff was notified on the ATM screen that there would be a fee for his requested transaction and since the Plaintiff pressed a button and accepted that fee, the causal link between the allegedly missing signage and the Plaintiff's injury was severed. Likewise, the plaintiff cannot recover actual damages because the maxim *volenti non fit injuria* prohibits a plaintiff from recovering "damages" that he voluntarily incurred with full knowledge. Therefore, for these additional reasons, dismissal is appropriate on the Plaintiff's claim for actual damages.

WHEREFORE, Burling Bank prays that its Motion to Dismiss is granted, for all of the reasons set forth in its Motion to Dismiss and herein.

Respectfully Submitted,

Burling Bank

By: One of its attorneys

12

John K. Kneafsey
Donald C. Shine
Thomas M. Lombardo
Nisen & Elliott, LLC
200 West Adams, Suite 2500
Chicago, IL 60606
312-346-7800

# Authorities without official reporter citations

**Westlaw.**

Slip Copy                                                Page 1
Slip Copy, 2006 WL 3840354 (W.D.Pa.)
(Cite as: 2006 WL 3840354 (W.D.Pa.))

**H**

Martz v. PNC Bank, N.A.
W.D.Pa.,2006.
Only the Westlaw citation is currently available.
United States District Court,W.D. Pennsylvania.
Paul A. MARTZ, individually and on behalf of all
others similarly situated, Plaintiff,
v.
PNC BANK, N.A., Defendant.
**No. CIV A 06-1075.**

Nov. 30, 2006.

Alfred G. Yates, Jr., Gerald L. Rutledge, Law Offices of Alfred G. Yates, Jr., Pittsburgh, PA, Guri Ademi, John D. Blythin, Richard A. Lilly, Robert K. O'Reilly, Ademi & O'Reilly, Cudahy, WI, Marvin A. Miller, Miller Faucher and Cafferty, Chicago, IL, for Plaintiff.
Michael H. Sampson, Thomas L. Allen, Reed Smith, Pittsburgh, PA, for Defendant.

*REPORT AND RECOMMENDATION*

MITCHELL, Magistrate J.

I. *Recommendation:*

*1 It is respectfully recommended that the defendant's motion to dismiss Count II of the complaint and to partially dismiss Count I to the extent the plaintiff seeks actual damages (Document No. 18) be granted as to Count II and denied in all other respects.

II. *Report:*

Presently before the Court is the defendant's motion to dismiss Count II of the complaint in its entirety (alleging unjust enrichment) and to partially dismiss Count I (alleging violations of 15 U.S.C. § 1693, et seq. and 12 C.F.R. § 205, et seq.) to the extent the plaintiff seeks actual damages. For reasons discussed below, the defendant's motion to dismiss

should be granted in part and denied in part.

The plaintiff, Paul A. Martz, commenced this purported class action by filing a two-count complaint against defendant PNC Bank, N.A. ("PNC"). The plaintiff complains that PNC violated the Electronic Fund Transfers Act, 15 U.S.C. § 1693, et seq. (the "Act"), and regulations promulgated thereunder, 12 C.F.R. § 205, et seq., (collectively, "EFTA") (Count I), for which it was unjustly enriched (Count II). The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331 and 1367.

The plaintiff alleges that PNC violated EFTA, because its automated teller machines ("ATMs") did not provide him notice that a fee *will* be charged and collected as part of his transaction; rather, its ATMs informed him that a charge *may* be assessed, even though PNC then assessed a fee and collected it as part of the electronic fund transfer. Alleging that PNC's ATMs do not provide definitive notice to consumers that a fee will be charged, the plaintiff brings this action "based upon the fact that the defendant imposed a fee without providing an accurate notice as required under the Act."(Complaint at ¶¶ 3, 5 6).

In 12 C.F.R. § 205.16(b), it is provided:

*General.*An automated teller machine operator that imposes a fee on a consumer for initiating an electronic fund transfer or a balance inquiry shall:

(1) Provide notice that a fee will be imposed for providing electronic fund transfer services or a balance inquiry; and

(2) Disclose the amount of the fee.

More specifically, 12 C.F.R. § 205.16(c) provides:

*Notice requirement.*To meet the requirements of paragraph (b) of this section, an automated teller machine operator must comply with the following:

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 3840354 (W.D.Pa.)
(Cite as: 2006 WL 3840354 (W.D.Pa.))

(1) *On the machine.* Post in a prominent and conspicuous location on or at the automated teller machine a notice that:

(i) A fee will be imposed for providing electronic fund transfer services or for a balance inquiry; or

(ii) A fee may be imposed for providing electronic fund transfer services or for a balance inquiry, but the notice in this paragraph (c)(1)(ii) may be substituted for the notice in this paragraph (c)(1)(i) only if there are circumstances under which a fee will not be imposed for such services; and

(2) *Screen or paper notice.* Provide the notice required by paragraphs (b)(1) and (b)(2) of this section either by showing it on the screen of the automated teller machine or by providing it on paper, before the consumer is committed to paying a fee.

**\*2** In 12 C.F.R. § 205.16(e), regulations promulgated under the Act provide:

*Imposition of fee.* An automated teller machine operator may impose a fee on a consumer for initiating an electronic fund transfer or a balance inquiry only if

(1) The consumer is provided the notices required under paragraph (c) of this section, and

(2) The consumer elects to continue the transaction or inquiry after receiving such notices.

The plaintiff contends that on April 4 and April 14, 2006, and on May 11 and May 17, 2006, he used a PNC ATM in Pennsylvania to conduct an electronic funds transfer involving the withdrawal of cash; that in each of those transactions, the defendant's ATM screen informed him that he "may" be charged an ATM fee, not that he "will" be charged an ATM fee; and that he was charged a fee of between $1.00 and $2.00 for each such electronic funds transfer without the defendant providing him requisite notice under EFTA. (Complaint at ¶¶ 41-43).

Based on these complained-of acts, the plaintiff alleges in Count I that PNC violated EFTA by failing to comport with the Act's notice and fee requirements. (Complaint at ¶¶ 53, 55). In Count II, the plaintiff asserts a claim for unjust enrichment, claiming that PNC was unjustly enriched at the expense of consumers such as himself by imposing ATM surcharge fees and deducting them from consumers' accounts in violation of EFTA. (Complaint at ¶¶ 57-58). The plaintiff brings these claims on behalf of a purported class consisting of:

(a) all consumers in the states of Pennsylvania, Virginia, Ohio, Kentucky, and the District of Columbia (b) who initiated an electronic funds transfer at a PNC ATM located in the states of Pennsylvania, New Jersey, Virginia, Ohio, Kentucky, and the District of Columbia, (c) the screen of which gave a notice stating in part that the PNC ATM 'may charge a fee ...' (d) and were charged a fee for withdrawing cash from the PNC ATM, (e) on or after a date one year prior to the filing of this action.

(Complaint at ¶ 44).

In response to the complaint, PNC has moved to dismiss the unjust enrichment claim in Count II for failure to state a viable claim. It also moves to partially dismiss the alleged EFTA violations in Count I to the extent the plaintiff seeks actual damages. In reviewing a motion to dismiss, all well-pleaded allegations of the complaint must be accepted as true and viewed in a light most favorable to the non-movant. *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Shaev v. Saper,* 320 F.3d 373, 375 (3d Cir.2003).

In Count II, the plaintiff contends that PNC was unjustly enriched by profiting from ATM surcharge fees which it imposed on consumers in violation of EFTA. In moving to dismiss Count II in its entirety, PNC argues that the plaintiff's unjust enrichment fails, as his relationship with it is based in contract. It also argues that the unjust enrichment claim is preempted by EFTA, since the plaintiff's prayer for damages in Count II is premised on the disgorge-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ment of all revenues obtained by it through ATM surcharge fees, which is inconsistent with the remedies provided by EFTA.

*3 Under Pennsylvania law, "the quasi-contractual doctrine of unjust enrichment is inapplicable when the relationship between the parties is founded on a written agreement or express contract."*Hershey Foods Corp. v. Ralph Chapek, Inc.,* 828 F.2d 989, 999 (3d Cir.1987) (citations omitted). Also see, *Wilson Area Sch. Dist. v. Skepton,* 586 Pa. 513, 895 A.2d 1250, 1254 (Pa.2006) ("it has long been held in this Commonwealth that the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract"). Here, PNC avers it had a contractual relationship with the plaintiff, insisting that when a consumer undertakes and completes an ATM transaction, as the plaintiff alleges here, he contracts with the ATM operator.

The plaintiff does not deny that he entered into an express contract with PNC when he undertook and completed his electronic fund transfers at its ATM. Indeed, the Act expressly states that a "consumer *contracts* for an electronic fund transfer service".15 U.S.C. § 1693c(a) (emphasis added).

To illustrate the transactions that may have occurred in this instance, PNC has submitted the declaration of Harry C. Cornell, its Assistant Vice President and technical project manager for its ATM fleet.[FN1] Mr. Cornell avers that after a non-PNC account-holder inserts an ATM card into a PNC ATM and before a fee can be assessed, a PNC ATM displays a screen stating that a fee "may" be charged. (Cornell declaration at ¶ 2). In such a scenario, the ATM screen provides in its entirety as follows:

> FN1. See, Harry Cornell's declaration, which is attached as Exhibit 1 to the defendants' memorandum in support of its motion to dismiss. Our review of Mr. Cornell's declaration does not convert the defendant's present motion to one for summary judgment, for "a defendant may supplement the complaint by adding exhibits such as public records and other indisputedly authentic documents underlying the plaintiff's claims."*Sentinel Trust Co. v. Universal Bonding Ins. Co.,* 316 F.3d 213, 216 (3d Cir.2003).

THIS PNC TERMINAL MAY CHARGE A $X.XX FEE FOR A CASH WITHDRAWAL. THIS FEE IS IN ADDITION TO ANY FEE THAT MAY BE ASSESSED BY YOUR FINANCIAL INSTITUTION.

DO YOU WISH TO CONTINUE THIS TRANSACTION?

IF YES PRESS TO ACCEPT FEE

IN [sic] NO PRESS TO DECLINE FEE

(Cornell declaration at ¶ 2).

Mr Cornell explains that depending on the location of the ATM, the fee amount displayed on the screen (represented by "X.XX") varies. (Cornell declaration at ¶ 3). If the user presses the button to accept the fee, the user proceeds with the transaction. (Cornell declaration at ¶ 4). If the user presses the button to decline the fee, the operation is cancelled, and the user is not assessed a fee. (Cornell declaration at ¶ 5).

The plaintiff does not dispute PNC's assertion that a contract is formed when the ATM user presses the "yes" button on the screen, thereby agreeing to continue with the transaction and accept the fee. Rather, in opposing PNC's motion to dismiss his unjust enrichment claim, the plaintiff argues that his contract with PNC is void and unenforceable, as it violates the notice and fee provisions of EFTA.

Under Pennsylvania law, it is generally the rule that "an agreement which violates a provision of a statute, or which cannot be performed without violation of such a provision, is illegal and void."*Dippel v. Brunozzi,* 365 Pa. 264, 74 A.2d 112, 114-115

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 3840354 (W.D.Pa.)
**(Cite as: 2006 WL 3840354 (W.D.Pa.))**

(Pa.1950). Having alleged that PNC violated EFTA during his transactions at its ATM involving the withdrawal of cash (complaint at ¶¶ 41-43, 53, 55-58), the plaintiff argues that the parties' contract is void, such that his claim for unjust enrichment may go forward. We disagree.

**\*4** The approved *Restatement (Third) of Restitution and Unjust Enrichment* § 32 (T.D. No. 3, 2004), which both parties cite to buttress their position, provides in pertinent part:

A person who renders performance under an agreement that is illegal or otherwise unenforceable for reasons of public policy may obtain restitution from the recipient in accordance with the following rules:

(1) Restitution will be allowed, whether or not necessary to prevent unjust enrichment, if restitution is required by the policy of the underlying prohibition.

(2) Restitution will also be allowed, as necessary to prevent unjust enrichment, if the allowance of restitution will not defeat or frustrate the policy of the underlying prohibition. *There is no unjust enrichment if the claimant receives the counterperformance specified by the parties' unenforceable agreement.*(Emphasis added).[FN2]

> FN2. Tentative Draft No. 3 of the *Restatement (Third) of Restitution and Unjust Enrichment* was approved at the 2004 Annual Meeting of the American Law Institute. http://ali.org/ali/R270103-ActionsTaken.htm (March 28, 2005).

The admonition that "[t]here is no unjust enrichment if the claimant receives the counterperformance specified by the parties' unenforceable agreement", *Id.,* comports with Pennsylvania law. That is, the Pennsylvania Supreme Court has stated: "If [the parties] have fully executed their unlawful contract, the law will not disturb them in the possession of what each has acquired under it."*Dippel,supra,*

74 A.2d at 114, quoting *City of Pittsburg v. Goshorn,* 230 Pa. 212, 79 A. 505, 510 (Pa.1911).

Here, the plaintiff received the benefit of the parties' contract by obtaining cash at PNC's ATM in completing his electronic fund transfers. Thus, even if the contract is deemed void due to PNC's alleged violation of EFTA, the plaintiff cannot state a claim for unjust enrichment, as the contract was fully executed, and the plaintiff received the counterperformance specified therein when he withdrew cash at the defendant's ATM.

Accordingly, Count II of the complaint should be dismissed in its entirety, because the parties' relationship is founded on an express contract, which renders the plaintiff's claim for unjust enrichment inapplicable. See, *Hershey Foods,supra,* 828 F.2d at 999;*Wilson Area Sch. Dist.,supra,* 895 A.2d at 1254. Furthermore, to the extent the parties' contract is deemed unenforceable due to PNC's alleged violation of EFTA, there is no unjust enrichment, as the plaintiff received the benefit of the fully executed contract by obtaining cash at PNC's ATM. See, *Restatement (Third) of Restitution and Unjust Enrichment* § 32 (T.D. No. 3, 2004); *Dippel,* 74 A.2d at 114.[FN3]

> FN3. Having found that the unjust enrichment claim in Count II should be dismissed for failure to state a viable claim, we do not address the defendant's alternate argument that the remedy sought by the plaintiff in his claim for unjust enrichment, i.e.-the disgorgement of fees-is inconsistent with the remedies allowed by EFTA and therefore preempted by it.

PNC also moves to partially dismiss Count I of the complaint to the extent the plaintiff seeks actual damages. In cases involving civil liability, as here, the Act only permits a consumer to recover actual damages, statutory damages, costs and reasonable attorney fees. Specifically, 15 U.S.C. § 1693m(a) provides:

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(a) Individual or class action for damages; amount of award

Except as otherwise provided by this section and section 1693h of this title, any person who fails to comply with any provision of this subchapter with respect to any consumer, except for an error resolved in accordance with section 1693f of this title, is liable to such consumer in an amount equal to the sum of-

*5 (1) any actual damage sustained by such consumer as a result of such failure;

(2)(A) in the case of an individual action, an amount not less than $100 nor greater than $1,000; or

(B) in the case of a class action, such amount as the court may allow, except that (i) as to each member of the class no minimum recovery shall be applicable, and (ii) the total recovery under this subparagraph in any class action or series of class actions arising out of the same failure to comply by the same person shall be not more than the lesser of $500,000 or 1 per centum of the net worth of the defendant; and

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

PNC moves to dismiss Count I to the extent the plaintiff seeks actual damages. It argues that the plaintiff has not pled a right to actual damages, as he has not alleged he incurred actual damages "as a result of" its alleged failure to comply with EFTA.

As set forth above, the Act provides that a plaintiff may recover "any actual damage sustained by such consumer as a result of [the defendant's] failure" to comply with EFTA. 15 U.S.C. § 1693m(a)(1) (emphasis added). Based on this statutory provision, PNC avers that to recover actual damages, a plaintiff must plead detrimental reliance on a defendant's alleged failure to comply with EFTA.

The few reported cases that have discussed the actual damages provision of EFTA have found that to recover actual damages, a plaintiff must establish causation of harm in the form of detrimental reliance. See, *Brown v. Bank of America*, 2006 WL 2989031, *6 (D.Mass., Oct.17, 2006) (finding that plaintiffs must "establish causation of harm in the form of detrimental reliance" to recover actual damages under EFTA, relying on case law interpreting the identical actual damages provision in the Truth in Lending Act); also see, e.g., *Polo v. Goodings Supermarkets, Inc.*, 232 F.R.D. 399, 408 (M.D.Fla., 2004) (stating that plaintiff "offers no authority for his inference that EFTA excuses plaintiffs from proving that their actual damages flowed from a detrimental reliance on erroneous fee postings", and observing that to certify a class action, the court would have to determine "whether [each] consumer actually saw and relied on an improper notice in deciding to proceed with the ATM transaction").

In *Brown,supra,* the court held the plaintiffs could not establish causation of harm in the form of detrimental reliance to recover actual damages under EFTA, explaining:

Even if the on-machine notice provided to customers was not properly placed, an ATM user must always affirmatively consent to being charged a fee on [the defendant Bank's] 'click through' screen before the Defendant levies a fee. Given this electronic consent, Plaintiffs cannot establish the causal link between an ill-placed decal and monetary loss necessary to recover actual damages under EFTA.

*6 2006 WL 2989031, at *6.

Similarly here, PNC argues that the plaintiff cannot establish detrimental reliance on its alleged failure to comply with EFTA notice requirements, because as part of his ATM transactions in withdrawing cash, he had to have pressed the "Yes" button on its ATM screen and thereby agreed to accept the fee that was charged for obtaining cash. In support of this argument, PNC relies on the declaration of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Harry Cornell concerning the above-recited text of its ATM screen, which purportedly allows a consumer to decline the fee if desired.

In response to this argument, and in opposing PNC's motion to partially dismiss Count I, the plaintiff asserts:

Mr. Cornell and PNC have made a determination as to which PNC ATM the plaintiff used, and then made factual representations about how that machine operates. If all of the machines were uniform, then this would not be objectionable. However, it appears that PNC is intimating that some of its ATMs operate differently from others. Clearly, Plaintiff is entitled to explore these differences, and to allow the adversarial process to develop a factual record as to how the various ATM machines operate.[FN4]

FN4. See, plaintiff's sur-reply brief at p. 1.

At the pleading stage of the case, where the plaintiff alleges that PNC "imposed a fee without providing an accurate notice as required under the Act" (Complaint at ¶ 6), we agree that it would be premature to conclude that the plaintiff cannot recover actual damages under EFTA. Thus, at this juncture, PNC's motion to partially dismiss Count I should be denied.

Therefore, it is recommended that the defendant's motion to dismiss Count II of the complaint and to partially dismiss Count I to the extent the plaintiff seeks actual damages (Document No. 18) be granted as to Count II and denied in all other respects.

Within thirteen (13) days after being served with a copy, any party may serve and file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

W.D.Pa.,2006.

Martz v. PNC Bank, N.A.
Slip Copy, 2006 WL 3840354 (W.D.Pa.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARL BOECHERER, individually and on behalf of all others similarly situated,   ) <br> ) <br> ) <br> Plaintiff,   ) <br> ) <br> v.   ) <br> ) <br> BURLING BANK,   ) <br> ) <br> Defendant.   ) | Case No. 08 cv 1332 <br><br> Judge Blanch Manning <br> Magistrate Judge Schenkier |

## **AFFIDAVIT**

Ms. Dora Asmussen, being duly sworn on oath, deposes and state as follows:

1.    I am Vice President and Cashier of Burling Bank, and I am authorized to make this affidavit on behalf of Burling Bank.

2.    The contents of this Affidavit are based on my personal knowledge of the subjects contained herein, and if called as a witness I can competently testify hereto.

3.    I understand that this Affidavit is being submitted on behalf of Burling Bank in connection with a Motion to Dismiss the Complaint in the above-captioned case.

4.    I reviewed the depository accounts carried on behalf of customers of Burling Bank and there is none listed for a Carl Boecherer.

5.    Burling Bank operates two ATMs in the lobby of 141 West Jackson Boulevard in Chicago, Illinois.

6.    Burling Bank never operated an ATM at 144 West Jackson Boulevard in Chicago, Illinois.

7.    The existing ATMs at 141 West Jackson are side-by-side one another, and were installed in February of 2006.

8.  At the time of their installation, Burling Bank caused a transaction fee notice to be posted on each of the two ATMs. The notices were affixed to the machines with adhesive. The notices provided:

    FEE NOTICE

    A fee may be imposed for a cash withdrawal. This fee is added to the amount of your transaction and is in addition to any fees that may be charged by your financial institution.

9.  At no time since the ATM transaction fee notices were installed did Burling Bank cause the notices to be removed, damaged or altered.

10. Before any Burling Bank ATM consumer was charged with an ATM transaction fee in August of 2007, the ATM screen notified the consumer:

    Burling Bank will charge U.S. cardholders a $1.75 fee for this transaction. This fee is in addition to any fees which may be charged by your financial institution.

    Do you wish to continue?

    Yes (Fee will be assessed)   ------------ >

    No (Cancel, Fee will not be assessed) - >

11. A Burling Bank ATM consumer must press a click through button and consent to the ATM transaction fee before the fee is charged to the consumer.


Further Affiant Sayeth Not


_____
Dora Asmussen


Signed and Sworn to before
me this _14_ day of _May_, 2008.


Notary Public

"OFFICIAL SEAL"
Luz E. Nunez-Mendoza
Notary Public, State of Illinois
My Commission Expires 08/19/10

2

# Exhibit B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| CARL BOECHERER, individually and on behalf of all others similarly situated, | ) ) ) | **08cv1332** |
| Plaintiff, | ) ) ) | **Judge: Manning** |
| v. | ) ) ) | **Mag. Judge: Schenkier** |
| BURLING BANK, | ) ) | JURY DEMANDED |
| Defendant. | ) ) | |

### CLASS ACTION COMPLAINT

Carl Boecherer ("Plaintiff"), by his attorneys, The Consumer Advocacy Center, P.C., states as follows for his Class Action Complaint against Burling Bank ("Defendant").

### The Parties

1.    Plaintiff is an Illinois citizen and resides in this district.

2.    Defendant is a bank with its principal place of business in Chicago, Illinois.

### Jurisdiction and Venue

3.    This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, because this action is brought pursuant to the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.*, and Regulation E, 12 C.F.R. § 205.1 *et seq.*

4.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because the transactions at issue occurred in this district, Plaintiff resides in this district and Defendant resides in this district.

# FILED

### MAR 0 5 2008 TG

**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

## Statutory/Regulatory Authority

5.    The Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.* ("EFTA"), and its implementing Regulation E, 12 C.F.R. § 205.1 *et seq.*, require an automated teller machine ("ATM") operator to provide notice to consumers that the operator will impose a fee on consumers for conducting a transaction at an ATM and the amount of such a fee.

6.    Specifically, 15 U.S.C. § 1693b(d)(3) and 12 C.F.R. § 205.16(c) require that an ATM operator disclose (a) on the ATM, that a fee will be imposed and (b) on the ATM screen, that a fee will be imposed and the amount of such a fee.

7.    The EFTA, 15 U.S.C. § 1693b(d)(3)(C), and Regulation E, 12 C.F.R. § 205.16(e), prohibit the imposition of a fee for using an ATM if the foregoing notice requirements are not met.

## Facts Related To Carl Boecherer

8.    On August 23, 2007, Plaintiff went to use an automated teller machine ("ATM") located near his current place of employment at the Chicago Board of Trade.

9.    In the lobby of 144 W. Jackson Boulevard, Defendant maintained two ATM machines located side by side one another.

10.    On August 23, 2007, there were no notices posted on or near either of Defendant's ATM machines located in the lobby of 144 W. Jackson Boulevard that disclosed that users would be charged any fee for their use.

11.    On August 23, 2007, Plaintiff used one of Defendant's ATMs located at 141 West Jackson Boulevard, Chicago, Illinois.

12.    On August 23, 2007, Plaintiff was charged a $1.75 fee to withdraw money from Defendant's ATM.

2

13.     Inspection of Defendant's ATMs shows that there were no signs or indicia that either of Defendant's ATMs previously had notices of an ATM fee disclosed on or near the surface of either ATM located at 141 West Jackson Boulevard, Chicago, Illinois.

## COUNT I
## VIOLATION OF EFTA AND REGULATION E

14.     Plaintiff incorporates herein by reference paragraphs 1-13.

15.     Plaintiff brings this Count on behalf of himself and a Class of all persons who were charged a transaction fee for the use Defendant's ATMs located in the Board of Trade Building at 141 West Jackson Boulevard, Chicago, Illinois.

16.     Pursuant to Fed. R. Civ. P. 23, a class action is appropriate and preferable because, on information and belief, the putative class consists of hundreds of persons and is so numerous that joinder of all putative class members, whether otherwise required or permitted, is impracticable.   The actual number of putative class members is in the exclusive control of Defendant.

17.     Pursuant to Fed. R. Civ. P. 23, a class action is appropriate and preferable because questions of law and fact common to the Class predominate over any questions affecting only individual putative class members, including:

> (a)     Whether, pursuant to 15 U.S.C. § 1693b(d)(3)(A) and 12 C.F.R. § 205.16, Defendant was an ATM operator at all relevant times during the class period that imposed a fee on consumers for providing host transfer services to those consumers; and

> (b)     Whether, at all relevant times during the class period, Defendant failed to comply with the notice requirements of 15 U.S.C. § 1693b(d)(3) and 12 C.F.R. § 205.16(c).

18.     Pursuant to Fed. R. Civ. P. 23, a class action is appropriate and preferable because Plaintiff's claims are typical of the claims of the putative class members, including:

3

(a)     Plaintiff and all putative class members used an ATM operated by Defendant;

(b)     Defendant failed to provide notices compliant with 15 U.S.C. § 1693b(d)(3) and 12 C.F.R. § 205.16(c) to Plaintiff and all putative class members; and

(c)     Defendant illegally imposed a fee on Plaintiff and all putative class members for their respective use of Defendant's ATMs located at 141 West Jackson Boulevard, Chicago, Illinois.

19.     Pursuant to Fed. R. Civ. P. 23, a class action is appropriate and preferable, because Plaintiff will fairly and adequately protect the interests of the Class and Plaintiff has hired counsel able and experienced in class action litigation.

20.     Pursuant to Fed. R. Civ. P. 23(b)(3), class certification is appropriate because questions of law or fact common to the Class predominate over any questions affecting only individual putative class members, and a class action is superior to other available methods for the full and efficient adjudication of the controversy.

21.     Pursuant to Fed. R. Civ. P. 23(b)(3), class certification is appropriate because this Court and the parties would enjoy economies in litigating common issues on a class-wide basis instead of a repetitive individual basis.

22.     Pursuant to Fed. R. Civ. P. 23(b)(3), class certification is appropriate because the size of each putative class member's actual damages is too small to make individual litigation an economically viable option.

23.     Pursuant to Fed. R. Civ. P. 23(b)(3), class certification is appropriate because no unusual difficulties will likely occur in the management of the Class as all questions of law or fact to be litigated at the liability stage are common to the putative class and all compensatory relief is concomitant with a liability finding and can be calculated by automated and objective means.

4

24. Pursuant to 15 U.S.C. § 1693b(d)(3)(D)(i) and 12 C.F.R. § 205.16(a), Defendant was an ATM operator at all times relevant to this action.

25. At all relevant times to this action, Defendant was the ATM operator of the Burling Bank ATMs located in 141 West Jackson Boulevard, Chicago, Illinois.

26. Defendant failed to comply with the notice requirements of 15 U.S.C. § 1693b(d)(3) and 12 C.F.R. § 205.16(c) when providing ATM services to Plaintiff and all putative class members.

27. Pursuant to 15 U.S.C. § 1693b(d)(3)(C) and 12 C.F.R. § 205.16(e), Defendant, therefore, illegally imposed a fee on Plaintiff and all putative class members for their respective use of Defendant's ATMs.

WHEREFORE, Plaintiff, individually and on behalf of the putative class, requests that this Court enter judgment in his favor and against Burling Bank and award the following:

A. Actual and statutory damages as set forth in the EFTA and Regulation E;

B. Attorneys' fees and costs of suit; and

C. Such other relief as this Court deems proper.

**Plaintiff Demands A Trial By Jury**

CARL BOECHERER, Plaintiff,

By: _____
Lance A. Raphael, One Of His Attorneys

Dated: March 5, 2008

Lance A. Raphael
Stacy M. Bardo
Allison Krumhorn
The Consumer Advocacy Center, P.C.
180 W. Washington St., Ste. 700
Chicago, IL 60602
312.782.5808

5

# Exhibit C

1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BRYAN MOWRY, ET AL.,                    ) DOCKET NO. 06 C 4312
                                        )
                    Plaintiffs,)
                                        )
        vs.                             )
                                        )
JP MORGAN CHASE BANK, N.A.,             ) Chicago, Illinois
                                        ) September 27, 2006
                    Defendant.)           9:00 o'clock a.m.


TRANSCRIPT OF PROCEEDINGS BEFORE THE HONORABLE
MILTON I. SHADUR, Judge

APPEARANCES:

For the Plaintiffs:

                MR. ANTHONY FATA and
                MR. ROBERT K. O'REILLY

For the Defendant:


                MR. MARK BLOCKER and
                MR. JORDAN GINSBERG and
                MR. GREGORY D. ISBELL


                JESSE ANDREWS
Official Court Reporter - U. S. District Court
            219 S. Dearborn Street
            Chicago, Illinois  60604
                (312)  435-6899


        *     *     *     *     *     *

2

1    THE COURT:  06 C 4312, Mowry against JP Morgan Chase.

2    MR. FATA:  Good morning, your Honor.  Anthony Fata,

3 F-a-t-a, on behalf of the plaintiffs.

4    MR. O'REILLY:  Along with Attorney Robert O'Reilly on

5 behalf of the plaintiff.

6    MR. BLOCKER:  Good morning, your Honor.  Mark

7 Blocker, B-l-o-c-k-e-r, on behalf of defendant JP Morgan Chase.

8    MR. GINSBERG:  Jordan Ginsberg on behalf of defendant

9 JP Morgan.

10    MR. ISBELL:  Gregory Isbell, your Honor, for JP

11 Morgan Chase.

12    THE COURT:  Is the meter running enough with five of

13 you here?

14    MR. ISBELL:  I am in-house, your Honor.

15    THE COURT:  Well, look.  I have received, as I trust

16 you have -- although you know it didn't conform to the one-day

17 read-time-notice requirements -- but because it was coming on

18 now I assume that the reason for having filed the motion on

19 behalf of the defendant, a motion to dismiss or strike the

20 claim for actual damages was served yesterday, and I assume you

21 have read it?

22    MR. FATA:  That is correct, your Honor.

23    THE COURT:  Well, you know it really echoes I think

24 the view that I had suggested in my original memo that I issued

25 sua sponte when I got the thing, you know you might quarrel

3

1 with my having resorted to the ancient volenti non fit injuria

2 and say, "Well, that was created for a different context." But

3 the fact is that if you think about it, when you think about it

4 in terms of proximate cause or the notion that you can't

5 ascribe whatever damage may be asserted to the violation

6 itself, because of the fact that the people were certainly on

7 notice that if they continued they were subject to the -- even

8 with the use of the word "may" -- they were subject to the

9 potential they were going to pay a $2 charge for using this

10 ATM.

11          Now that being the case, I don't see any prospect for

12 the actual damages aspect of this thing. I read your memo as

13 well. But when you talk about damages, when you talk about

14 injury, the incident has to be the consequence of the other

15 side's action.

16          In this case, you know you can slice it a whole group

17 of different ways. You can say there was an independent and

18 intervening clause, to coin another phrase that's lawful in the

19 law, and the intervening clause was that the customer, the

20 plaintiffs here, when they see the thing on the screen and

21 recognize that they are at risk at a minimum go ahead and do it

22 in any event. And that's of course what happened here.

23          Now don't misunderstand. I am not suggesting, and I

24 believe that Chase didn't suggest, that there wasn't a

25 violation in terms of the manner in which the reg read, and

4

1 therefore a statutory violation because of the fact that the

2 language is different in the two subsections, and that only one

3 of them is incorporated into what goes on the screen. But

4 that's a different issue. The fact of the violation is a

5 different issue from the notion of damages.

6          And accordingly, you know whether you call it a

7 dismissal or striking of the claim for actual damages, my

8 determination is that you are relegated basically to statutory

9 damages, not the actual damages.

10          MR. O'REILLY: Your Honor, I certainly respect the

11 Court's view. I would simply say that there is a federal

12 statute and regulation on point. And that federal regulation

13 and statute states that if the ATM operator does not provide

14 the proper notice it may not charge a fee.

15          We are --

16          THE COURT: Well, I am well aware of that.

17          MR. O'REILLY: Excellent. I just want our case to be

18 made. We haven't submitted a reply.

19          THE COURT: Well, you made your case, however, in

20 your memorandum regarding the actual damages. I mean you

21 anticipated the issue, and properly so, because I had said

22 "Let's hear about that."

23          So I read that. I read whatever authorities you

24 dealt with. But again I think that you are -- I won't

25 characterize it as "confusing the issue," but really you are

5

1 contemplating two matters: One of them is the existence of

2 violation which I will find based on your allegation and your

3 submission is established.

4     And actually I don't read the defendant as having

5 quarreled with that. That is, they are saying -- I don't know

6 if they want to give that up forever, but in any event for this

7 purpose they are saying, "We look at the complaint. We

8 acknowledge that that establishes violation of the provision."

9     And I recognize that the provision says you can't

10 make a charge. But the point is that when you talk about the

11 damage that results from that, the damage as I have said is

12 directly the product of the plaintiffs' own action. They

13 characterize it in a number of different ways -- you know,

14 assumption of risk -- you know drawing on a lot of other areas

15 of the law. But the point is that -- and voluntary payment --

16 however you characterize it in terms of doctrine, the answer is

17 still the same. And that is, that you cannot lay the claim of

18 damage at the defendant's doorstep. They may have a violation,

19 but the damage resulted from the plaintiffs' action.

20     And actually having been forewarned, incidentally,

21 the only conceivable contention that could be made to the

22 contrary is, "Well, gee, we were terribly inconvenienced," you

23 know, because we were there at the machine, and therefore,

24 "Yes, maybe we took our chances. And isn't it horrible that we

25 got stuck with a $2 charge."

6

1    But come on.  In real world terms you go into your
2    local supermarket, you got an ATM, you know the idea of saying
3    that somehow harm is attached to the fact that somebody may be
4    stationed at a machine and is put to the terrible pressure of
5    "Gee, am I going to get my money out of this one or another
6    one," that again in the real world doesn't persuade.
7         So I am granting the motion to limit -- I don't know
8    whether to characterize it as striking the claim as kind of and
9    odd locution -- I am granting the motion to limit the
10   recoverable damages, the statutory damages.  Defendant has no
11   quarrel with that.
12        So my next question is what kind of time does the
13   defendant need to file an answer to the Complaint?
14        MR. O'REILLY:  I am sorry, to interrupt, your Honor.
15   Just for the sake of completeness their motion actually
16   requested two things.  The second was to dismiss Counts 2 of
17   the Complaint, which is a count for unjust enrichment.  I
18   assume that you are going in the same venue.  But just for the
19   sake of completeness I think you should finish that.
20        THE COURT:  Yes.  I appreciate that.  Yes.  The
21   characterization of "unjust enrichment" of course is another
22   one of those labels.  And it's a label for a situation in which
23   the standards are the ones that are set out in the motion.  And
24   I think that the same analysis would knock out the common law
25   claim they have relied on.  They have relied for that purpose

7

1  on local law rather than federal law, and I think the same

2  analysis applies.  So that means that it's an answer, and thank

3  you for raising that.  It's an answer to Count 1 and what kind

4  of time are you going to need?

5          MR. BLOCKER:  Your Honor, we can answer in 14 days.

6          THE COURT:  Okay.  I will grant you 14 days.  Now

7  this is I think likely to be largely a paper case.  I don't

8  know -- you know Rule 26(a) as you know says advance disclosure

9  have to be made.  And I am frankly not exactly sure what the

10 advance disclosures would have to be in this situation.  There

11 is really not a quarrel about what happened and the

12 circumstances, and the fact that I gather that this much be the

13 universal situation in terms of the Chase ATMs.  Am I right

14 about that?

15         MR. BLOCKER:  Your Honor, counsel and I talked about

16 a schedule as your Honor's order required us to do.  Our

17 suggestion was actually going to be to hold off on doing any

18 discovery until your Honor resolved the issuing of actual

19 damages.  We perhaps naively didn't anticipate that you would

20 rule on that today.  Having done that, we thought we would

21 start discovery after your Honor's ruling.

22         However, I guess what I would recommend, your Honor,

23 is maybe the parties should sit down and decide where we are at

24 given your Honor's ruling on what needs to be done.  Because as

25 your Honor said, I do think you are probably correct it's a

8

1   paper case.  And as your Honor corrected.

2           THE COURT:  A paper Chase?

3           MR. BLOCKER:  Yes.  And at least at this point we

4   have for purposes of the motion to dismiss, we didn't contest

5   that there was a violation.  But we would like to sit down and

6   talk with the plaintiffs and see if there is way to resolve

7   this, you know promptly.

8           THE COURT:  All right.  Why don't we do this then.

9   Suppose that I set this out for maybe about three weeks.  Let

10  me take a look here.  How are you perhaps situated at 8:45 on

11  October 16th, a Monday?  Because the problem is the following

12  week I going be away.  We have a Seventh Circuit workshop two

13  days, and then I will be sitting with the Ninth Circuit.  And

14  so if we didn't make it in that week, I think I could do it

15  either -- yes 8:45 the 16th might be best.  How is that for

16  both sides?

17          MR. O'REILLY:  That works, sir.

18          THE COURT:  All right.  Status then at 8:45.

19          MR. BLOCKER:  Your Honor, I don't want to upset the

20  apple cart.  Somebody could always attend in my stead.  But I

21  know I have depositions in washing though that entire week.  Is

22  it possible we could do it before that time?

23          THE COURT:  Well, it's really what you tell me.  I

24  mean you want the opportunity to confer.

25          MR. BLOCKER:  Yes.

9

1    THE COURT:  I don't know how much time you need for
2  that.

3    MR. BLOCKER:  Well --

4    THE COURT:  I can do it earlier, for example on
5  Friday the 13th maybe at 9 o'clock.

6    MR. BLOCKER:  That would be better for me, if it's
7  acceptable to plaintiffs' counsel.

8    THE COURT:  All right.  Status then 9 o'clock on
9  October 13th.

10    MR. BLOCKER:  Okay.

11    THE COURT:  Let me make a note here.

12    Okay.  Thank you all.

13    MR. O'REILLY:  Thank you, your Honor.

14    THE COURT:  I don't have a problem deferring it.  Let
15  me ask you with next week, again I am also going to trial, but
16  I should be through with that -- well, it may spill over into
17  the beginning of the following week, because remember I am
18  starting on the 3d, I am starting on Tuesday.  And then we have
19  got a holiday, as you know, Columbus Day observed on the 9th.
20  So on maybe it would be -- let's see. We have a sentencing on
21  the 11th at 11 o'clock -- at 1:15, rather?

22    THE CLERK:  David campos.

23    THE COURT:  Okay.  If you want to do it on the 11th,
24  Wednesday -- well, I'd better not.  I am trying to be sure with
25  the trial.  How about the 12th.  The 12th is clear, isn't it?

10

1      MR. FATA:  That's fine--

2      THE COURT:  So we will set it for 1:15 on Thursday

3  the 12th.

4      MR. FATA:  Thank you very much.

5      MR. BLOCKER:  Thank you, your Honor.

6      (WHICH WERE ALL OF THE PROCEEDINGS HAD AT THE HEARING OF
   THE ABOVE-ENTITLED CAUSE ON THE DAY AND DATE AFORESAID.)

7

8              C E R T I F I C A T E

I HEREBY CERTIFY that the foregoing is a true and correct
9  transcript from the report of proceedings in the above-entitled
   cause.

10

11 JESSE ANDREWS, CSR
   OFFICIAL COURT REPORTER
12 UNITED STATES DISTRICT COURT
   NORTHERN DISTRICT OF ILLINOIS
13 EASTERN DIVISION
   DATED: February 26, 2007

14

15

16

17

18

19

20

21

22

23

24

25

# Exhibit D



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BRYAN MOWRY, et al.,                )
                                    )
                Plaintiff,          )
                                    )
        v.                          )    No.  06 C 4312
                                    )
JP MORGAN CHASE BANK, N.A.,         )
                                    )
                Defendant.          )

<u>MEMORANDUM</u>

This Court has just received the chambers copy of a newly-filed putative class action brought against JP Morgan Chase Bank, N.A. ("Chase"). Each of three plaintiffs (who are also the proposed class representatives) complains there that he used a Chase ATM and was charged a $2 fee for that use. As might be expected by anyone familiar with actions of this nature, plaintiffs seek to catch the brass ring (or rather the gold ring) of major damages and corresponding attorneys' fees in a presently unascertainable amount. This Court is contemporaneously issuing its customary initial scheduling order, but this additional memorandum is being issued to apprise both (1) the putative class counsel and their clients and (2) Chase and its counsel of a question that this Court perceives as being posed by the litigation.

What plaintiffs point to in the Complaint is a difference in language within portions of the Federal Reserve System's Regulation E appearing in 12 C.F.R. (cited "Reg. E §--"), which

has been promulgated to implement the Electronic Fund Transfers Act ("Act").[1] Based on that difference in language, plaintiffs' contention is that the information that appears on Chase's ATM screens must say that it <u>will</u> (not that it <u>may</u>) impose a fee for use of the ATM (attached to this memorandum are pages of the Complaint that reproduce (1) Reg. E §205.16(b), (c) and (e), (2) Section 1693(b)(d)(3)(C) and (3) the two forms of notice that are provided by Chase--one being affixed to the ATM itself, the other being displayed on the ATM screen before anyone such as plaintiffs (that is, any person not holding a Chase card) implements the contemplated cash withdrawal).

No opinion is of course expressed here as to the substantive merit of plaintiffs' legal contention, a question to be resolved after the parties tilt their legal lances on the subject. What is said here is instead intended to apprise counsel of a question that they should be prepared to address as part of their input, assuming for that purpose that plaintiffs are correct in urging their legal position as to the noncompliance of the on-screen notification with the language of Reg. E.

In those terms it seems clear from Complaint ¶30 that anyone who sees the "may charge" notice, and who therefore asserts uncertainty as to whether he or she will in fact be charged a

---

[1] Citations to the Act will take the form "Section --," similarly eliminating any need for repeated references to 15 U.S.C.

2

fee, then has the express option to proceed or not to proceed

with the withdrawal of funds.  If that is indeed so, counsel

should be prepared to provide authority as to whether or not the

decision to proceed might be viewed as a self-inflicted wound of

the type that has long been characterized in the law by the maxim

"volenti non fit injuria."

That question appears to be relevant in part because of the

special class-action provisions as to civil liability, as set out

in Section 1693m, which speaks of such liability:

in any amount equal to the sum of --

(1) any actual damage sustained by such consumer
as a result of such failure;

*      *      *

(2)(B)  in the case of a class action, such amount
as the court may allow, except that (I) as to each
member of the class no minimum recovery shall be
applicable...; and

(3)  in the case of any successful action to
enforce the foregoing liability, the costs of the
action, together with a reasonable attorney's fee as
determined by the court.

Again, the subject touched on here is one that counsel should be

prepared to discuss at the time of the initial status hearing

established by this Court's contemporaneous memorandum order.

_____
Milton I. Shadur
Senior United States District Judge

Date:  August 11, 2006

3