UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| CARL BOECHERER, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08 C 1332 |
| | ) | Judge Blanche Manning |
| | ) | |
| BURLING BANK, | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Carl Boecherer alleges that the defendant, Burling Bank, failed to post a notice on one of its automated teller machines ("ATMs") disclosing that it charged a fee to certain users. The plaintiff brings suit under the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq*. ("EFTA") on behalf of himself and a putative class. The parties have filed cross-motions for summary judgment.[1] For the reasons stated below, the bank's motion for summary judgment is denied and the plaintiff's partial motion for summary judgment is granted in part and denied in part.

**I.  Facts**

The plaintiff alleges that the required fee notice was not posted on the defendant's ATM machine located at 141 W. Jackson, Chicago, Illinois, when he used it to withdraw cash on August 23, 2007, and that he was charged $1.75. The plaintiff has submitted a photograph of the relevant ATM machines, which he certifies he took on August 24, 2007, the day after he withdrew money from the ATM, showing that there is no fee notice posted on the machine. The plaintiff's certification also indicates, as shown by attached photographs, that there were no fee notices posted on the relevant ATMs on or around September 23, 2007. Further, at least one of the ATMs was missing a fee notice on February 11, 2008. As stated in more detail below, on more than one occasion, bank personnel witnessed fee notices on the floor in front of the ATM. The parties dispute whether the notices fell off on their own or were taken off by unknown third parties. Bank personnel also noticed on certain occasions that the fee notices had become only partially affixed to the ATM.

Burling Bank's principal place of business is located at 141 W. Jackson, Chicago, IL, commonly known as the Chicago Board of Trade ("CBOT") building. Since it began operations

---

[1]The plaintiff had filed a motion for class certification, but upon agreement between the parties, it was withdrawn. Dkt. #67. Thus, only the cross-motions for summary judgment are before the court.

in 1989, Burling Bank has owned and operated two ATMs in the lobby of the CBOT building. The ATMs that were initially placed in the lobby by the bank were replaced in February 2006. Maribeth Chambers is presently a vice-president of Burling Bank and has been employed with the bank since 1989 when it originally opened.

Burling Bank has been aware of its obligations to post on-machine fee notices since the requirement was imposed pursuant to the ATM Fee Reform Act of 1999.

Burling Bank states that the fee notices required by the EFTA were affixed to the original ATMs, *see* DSOF at ¶ 7. In support, Burling Bank points to the deposition testimony of Chambers, who, when asked the question, "If you look at the picture in Exhibit 7 of the original ATMS, you can see in there the fee notice, right?" responded "yes." Now, however, the plaintiff asserts that the language on the stickers in the photograph is unreadable and thus, he cannot admit or deny whether the stickers were EFTA-compliant. Based on the question presented by the plaintiff in the deposition, the court concludes that the plaintiff was aware that the original ATMS contained EFTA-compliant fee notices.

The fee notices on the original ATMs were transferred to the new machines when the machines were replaced in February 2006. Specifically, the fee notices were peeled off the original ATMs and affixed to the new machines by Maribeth Chambers. Then, in March 2006, new fee notices were placed on the machines. In October 2006, fee notices that had been printed on white paper, approximately 5" by 3" with black lettering were affixed to the machine using double-sided Scotch tape. In October 2006, the original beige fascia of the machines was replaced by new charcoal fascia and the fee notices were transferred to the new fascia by Dora Asmussen, Vice-President of Burling Bank.

Asmussen then replaced the fee notices in the first quarter of 2007. The plaintiff denies this statement on the ground that Asmussen did not state that she "replaced" the old fee notices but that she "placed" the fee notice on the ATM at that time.

Leon Schnayer, the bank's compliance officer, testified that he placed a fee notice on at least one machine on February 11, 2008. He does not recall if the fee notice was missing from one or both of the ATM machines.

On September 2, 2008, Chambers affixed to the ATMs fee notices that were printed on mailing labels rather than affixing the laminated fee notice using double-sided tape as previously done. In response to the question "[I]nformally, prior to the filing of this lawsuit, various bank officers would periodically look at the ATMs and if they noted that the fee notices were not present, would take action?", Asmussen said "Yes."

Chambers testified that on a number of occasions, she had seen that one of the fee notices had fallen off the ATM. Immediately upon noticing the fallen fee notice, Chambers would reaffix the fee notice to the ATM. Chambers also testified that between October of 2006 and

September of 2008, on certain occasions, she noticed that the fee notices had become partially unaffixed and she would personally reattach them.

While Asmussen, as a Rule 30(b)(6) witness, testified that it was the bank's belief that the fee notices were "taken down by other than bank personnel" if the fee notices were not on the ATMs, the plaintiff notes that Chambers testified that she used a mailing label for the fee notice because the "adhesive wasn't working," and on at least one occasion, she had witnessed the fee notice laying on the floor in front of the machine or at other times hanging off or about to fall off of the ATM.

The bank ordered notices required under the Funds Availability Act from a third-party supplier but, as previously noted, made their own fee notices for the EFTA using Word and affixing them with either double-sided tape or as a mailing label.

Burling Bank retained the firm of Crowe Horwath (f/k/a Crowe Chizek and Company LLP), at least in 2005, 2006 and 2007, to audit Burling Bank's compliance with federal regulations including the EFTA and Regulation E. According to Niall Twomey, a senior manager at Crowe, as part of a compliance consulting engagement, Crowe would perform a review pursuant to a "lobby display checklist" to ensure that the ATM disclosures "are what they should be." Twomey Dep. at 17-18. Crowe's 2007 ATM checklist states "a notice is provided either on the ATM *or* on the ATM screen (before the consumer is committed to paying a fee) indicating that a fee will be imposed . . . ."

## II. Motion to Strike

The plaintiff moves to strike several paragraphs of the plaintiff's statement of material facts as not being supported by the record. The court will not detail each alleged violation; however, to the extent that a party's statement of facts is not supported by the record, the court will not consider that fact in deciding the instant motions.

The plaintiff also moves to strike the affidavit of Niall Twomey. In arguing that it has satisfied its obligations under the EFTA and is therefore allowed, by statute, to avoid liability for its failure to have the fee notice posted, the bank points to the affidavit of Twomey. In his affidavit, Twomey states that he has worked as a senior manager at Crowe Horwath LLP since May 2007. He further attests that in connection with that position, he "organize[s] and oversee[s] compliance consulting engagements undertaken by Crowe on behalf of [its] clients." Defendant's Exh. E-1, ¶ 4. Specifically, Twomey states that he is familiar with the requirements imposed by the EFTA and Regulation E and that as part of his consulting engagements with banks, he "inspects and evaluates the bank's compliance with [these federal laws]." In the affidavit, Twomey stated that "in the years 2005, 2006 and 2007, Burling Bank retained Crowe to inspect two ATM machines it operates, which are located in the lobby of 141 W. Jackson Blvd., Chicago, IL." *Id*. at ¶ 7. He further states that "[a]s part of its overall compliance inspection, Crowe inspected these ATMs for compliance with the Electronic Funds Transfer Act and

Regulation E." *Id.* at ¶8. Specifically, Twomey attests that "Crowe inspected these machines to ensure each machine had a written notice affixed thereto stating that the bank may impose a fee for use of the ATM. . . ." *Id.* at ¶ 9. Twomey goes on to state that had Crowe found that either of Burling Bank's ATMs was missing a fee notice, Crowe would have notified the bank of the deficiency in its "Compliance Consulting Reports, which were tendered to Burling Bank in November of 2005, September of 2006, and December of 2007." *Id.* at ¶ 10. According to the affidavit, no deficiency was found and therefore Burling Bank was not notified of any deficiency. *Id.* at ¶ 11. Finally, he states that he personally viewed the fee notices posted on the ATMs in December 2007.

The plaintiff moves to strike the affidavit on several grounds. He first asserts that it is invalid because it is unsworn in that it refers to Illinois Code of Civil Procedure 1-109 rather than its federal counterpart 28 U.S.C. § 1746, which states that:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same . . . such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration . . . in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
> . . .
> (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).
> (Signature)".

Thus, 28 U.S.C. § 1746 permits unsworn statements if they are made "under penalty of perjury that the foregoing is true and correct." Twomey's declaration does not state that it is being made under penalty of perjury; rather, it states that "[*u*]*nder penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure*, the undersigned certifies that the statements set forth herein are true and correct." Section 1-109 of the Illinois Code of Civil Procedure states that "[u]nless otherwise expressly provided by rule of the Supreme Court, *whenever in this Code* any . . . *document or pleading filed in any court of this State is required or permitted to be verified, or made, sworn to or verified under oath*, such requirement or permission is hereby defined to include a certification of such pleading, affidavit or other document under penalty of perjury as provided in this Section." 735 ILCS 5/1-109 (emphasis added). In other words, the plain language of Section 1-109 states that "whenever in this Code" a document is required to be sworn to, the individual may use the approved certification language to bypass the need for the affidavit to be sworn.

Because Twomey's affidavit is not being filed pursuant to the Illinois Code of Civil

Procedure, but rather pursuant to the Federal Rules of Civil Procedure, Twomey would not be subject to the penalties under Section 1-109 of the Illinois Code of Civil Procedure. Because, under the language he used, Twomey would not be subject to penalty of perjury, his certification does not comply with the requirements of 28 U.S.C. § 1746 that the certification be made "under penalty of perjury." Accordingly, the motion to strike is granted.

III.   Analysis

    A.   **Electronic Funds Transfer Act**

Under the relevant portion of the EFTA, an ATM operator must provide notice to a user of "(i) the fact that a fee is imposed by such operator for providing the service; and (ii) the amount of any such fee." 15 U.S.C. § 1693b(d)(3)(A). The required notice "shall be posted in a prominent and conspicuous location on or at the automated teller machine at which the electronic fund transfer is initiated by the consumer . . . " and "shall appear on the screen of the automated teller machine, or on a paper notice issued from such machine, after the transaction is initiated and before the consumer is irrevocably committed to completing the transaction. . . ." 15 U.S.C. § 1693b(d)(3)(B)(i) and (ii).

The Board of Governors of the Federal Reserve System issued Regulation E to implement the EFTA. 12 C.F.R. § 205.1. As to notice of fees, Regulation E states that:

> (c) Notice requirement. . . . [A]n automated teller machine operator must comply with the following:
>> (1) On the machine. Post in a prominent and conspicuous location on or at the automated teller machine a notice that:
>> (i) A fee will be imposed for providing electronic fund transfer services or for a balance inquiry;. . .

Thus, both the statute and the regulation require that a notice that a fee will be imposed be posted on or near the ATM machine. However, neither sets forth any specific requirements regarding the size, features, or other attributes of the notice. Failure to comply with the notice requirement can result in civil liability for damages. 15 U.S.C. § 1693m(a).

The EFTA, however, contains a provision which states that:

> If the notice required to be posted pursuant to section 1693b(d)(3(B)(i) of this title by an automated teller machine has been posted by such operator in compliance with such section and the notice is subsequently removed, damaged, or altered by any person other than the operator of the automated teller machine, the operator shall have no liability under this section for failure to comply with section 1693b(3)(B)(i).

15 U.S.C. §1693h(d).

In addition, a bank may avoid liability "if the person shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. §1693m.

The bank moves for summary judgment on the ground that each of these provisions provides them protection from liability while the plaintiff moves for partial summary judgment on the ground that the bank has failed to satisfy the requirements of these provisions. Because the motions are mirror images of each other, the court considers them together.

### B. Burling Bank's Motion for Summary Judgment and the Plaintiff's Cross-Motion for Partial Summary Judgment

1. <u>Is the defendant excused from liability under §1693h(d)?</u>

The bank contends that because the plaintiff cannot establish: (1) that it failed to post the requisite notices on or near the ATM at issue or (2) that the notice was subsequently removed by a Burling Bank employee or any individual acting with authorization from Burling Bank, it is shielded from liability by § 1693h(d). This section, as noted above, provides that the ATM operator shall have no liability for the absence of a proper notice if the notice was posted by the operator as required and the notice is "subsequently removed, damaged or altered by any person other than the operator" of the machine.

The plaintiff responds that the defendant has produced no evidence that somebody outside the bank removed the fee notices that the bank asserts it posted. Moreover, it notes that the fee notices were attached only with tape and that Chambers acknowledged that she had noticed on several occasions that the fee notices had fallen off of the machines or were only partially affixed. The plaintiff also points out that Burling Bank admits that while it ordered more permanent signs for other federally-mandated notices, it decided to create its own fee notice using Microsoft Word and post it using Scotch tape. The plaintiff thus concludes that because the fee notice fell off due to the bank's "own ineptitude" and not because a third party removed it, the bank cannot seek protection under this section.

As noted by the bank, neither the statute nor the regulation require that the notice be in any particular format or be posted in any particular way. Thus, the bank is, pursuant to the language of the statute and regulation, allowed to choose to affix the required notice with double-sided tape. That being said, the bank has not come forward with any specific evidence that the notice was "subsequently removed, damaged or altered *by any person other than the operator of the automated teller machine*." 15 U.S.C. § 1693h(d)(emphasis added). In attempting to avail itself of the protection of this section, the bank asserts that "[b]ecause the evidence in this case unequivocally establishes that Burling properly posted and did not subsequently remove the Fee

Notices, Section 1693h(d) shields Burling from liability." Reply at 10. But this approach misstates the language of the protection. The relevant inquiry is not that the bank did not remove or alter the sign, it is whether the notice was removed, damaged or altered "by any person other than the operator" of the machine. The bank notes that Chambers testified that people would pick at the signs, thus causing the bank to have to occasionally replace them. Even assuming this is true, simply because unspecified individuals may have picked at the notice over time does not mean that someone removed, altered or damaged the fee notice with respect to the violation at issue. Given that it is undisputed that the bank used tape to affix the notice and Chambers testified that she found the notice on the floor in front of the ATM on several occasions, it is possible that the sign fell off the machine on its own. The bank has not pointed to any authority that would allow it to seek protection pursuant to this section under such circumstances.

The bank asserts that the plaintiff's position that the exception applies only when the ATM operator can affirmatively show that a specific third party removed the fee notice is unreasonable because "no court has ever imposed such a limited application of this exception and . . . neither the EFTA nor the regulations require such proof." Reply at 11. That no court has ever imposed such a requirement is not persuasive as the bank fails to point to any cases in which the court has addressed circumstances similar to the one at issue. Regarding the language of the statute and regulation, the bank asserts that to require specific proof of third-party intervention would "be tantamount to amending the statute by judicial decision" and would "effectively require an ATM operator to monitor its ATM twenty-four hours a day, three-hundred and sixty-five days a year in order to prove that any removal or damage to the Fee Notice was that of a third party – a requirement clearly not intended under the statute." Reply at 12. Again, not only is this assertion completely unsupported by authority but it contradicts a basic tenet of statutory interpretation which requires a court to look to the plain language of the statute in interpreting it. *Middleton v. City of Chicago*, 578 F.3d 655, 658 (7th Cir. 2009)("[W]hen interpreting a statute, we must begin with its text and assume 'that the ordinary meaning of that language accurately expresses the legislative purpose'" )(citation omitted). Here, the statute expressly refers to "any person other than the operator of the automated teller machine." The language is clear and straightforward. In the absence or authority to the contrary, the court is unwilling to accept the bank's proposed construction of the clear and straightforward language of the statute.

Accordingly, the bank's motion for summary judgment as to this issue is denied. Moreover, given the fact that the bank has failed to point to any specific competent evidence that the notice was removed, damaged or altered "by any person other than the operator" of the machine, the plaintiff's cross-motion for summary judgment that the bank is not entitled to protection under this section is granted.

2. Is Burling Bank excused from liability under § 1693m(c)?

The bank also seeks to avoid liability under § 1693m(c), which states that a "person may not be held liable [for the failure to post a fee notice] if the person shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error

Page 7

notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." Burling Bank argues that the undisputed evidence shows that it created and posted the notices, it was the bank's practice to periodically examine the ATMs to determine whether the fee notices needed to be replaced or repaired, and it never received any report from its independent auditor, Crowe, that the notices were deficient or non-compliant. The bank further notes that Twomey personally inspected the ATMs in December 2007 and witnessed the required fee notices on the machines. Thus, the bank asserts that if the fee notices were indeed missing, it was "unintentional and resulted from a bona fide error notwithstanding the maintenance procedures reasonably adapted to avoid any such error."

As an initial matter, the court struck Twomey's affidavit, so the bank may not rely on statements in that affidavit in support of its motion for summary judgment. In addition, the plaintiff notes that reliance on Crowe, the independent auditor, cannot save the bank since Crowe's compliance checklist for 2007 only asked whether the bank had *either* an on-screen *or* posted notice, not both, as required by the EFTA.[2] Moreover, the trier of fact could determine that, despite the testimony that bank officers periodically examined the ATMs, the fact that the bank used double-sided tape to affix the notice, rather than a more permanent adhesive, was unreasonable. This is particularly true given that the bank admits that third-parties would pick at the signs on the ATMs.

The court concludes that a genuine issue of material fact exists as to whether the bank maintained procedures reasonably adapted to avoid the fee notice being missing from the machine. Accordingly, the bank's motion for summary judgment and the plaintiff's cross-motion for summary judgment as to this issue are denied.

3. Reliance and Causation

Finally, the bank briefly contends that the plaintiff has no evidence establishing detrimental reliance or causation. The plaintiff does not respond to this argument and the bank fails to address it in its reply. Accordingly, the court construes this failure to address the argument as an abandonment of the issue and will not consider it.

---

[2]The plaintiff also asserts that the bank cannot establish that it had procedures in place to avoid the violation at the time it occurred given that the bank instituted a log check in May 2008, after the instant lawsuit was filed, to ensure that the required notices are present. According to the plaintiff, prior to the initiation of the log book, no policy or procedure was in place to check that the fee notices were posted. However, as noted by the bank, Fed. R. Evid. 407 provides that "evidence of subsequent measures is not admissible to prove negligence [or] cuplable conduct . . . ." Thus, the court will not consider evidence of the log book in determining whether the bank had procedures in place that were reasonably adapted to prevent error.

## IV. Conclusion

For the reasons stated above, the bank's motion for summary judgment [79-1] is denied and the plaintiff's cross-motion for partial summary judgment [83-1] is granted in part and denied in part. The plaintiff's motion to strike [92-1] is granted.

**ENTERED:**

**Date: December 1, 2009**

_____
**Blanche M. Manning**
**United States District Judge**